UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 22-60416-CIV-ALTMAN/HUNT

GLADYS ALVARADO,

    Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner for Social Security,
    Defendant.
_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before this Court on the Parties' Cross Motions for Summary Judgment. ECF Nos. 11, 15. The Honorable Roy K. Altman, United States District Judge, referred this matter to the undersigned United States Magistrate Judge for a Report and Recommendation. ECF No. 10; *see also* 28 U.S.C.A. § 636(b); S.D. Fla. L.R., Mag. R. 1. Upon thorough review of the Motions and the Responses thereto, the entire case file, the applicable law, and being otherwise fully advised in the premises, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 11, be **DENIED** and that Defendant's Motion for Summary Judgment, ECF No. 15, be **GRANTED**.

## BACKGROUND

Gladys Alvarado ("Plaintiff") filed an application for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on July 24, 2020, alleging disability beginning on March 1, 2020. ECF No. 9 at 250, 258. The

Social Security Administration ("SSA") denied her claim at the initial and reconsideration levels. *Id.* at 147–50. A hearing on Plaintiff's disability claim took place on August 19, 2021. *Id.* at 51–73. An Administrative Law Judge ("ALJ") issued an unfavorable decision denying Plaintiff's claim. *Id.* at 31–45. The Appeals Council denied Plaintiff's request for review of the ALJ's unfavorable decision. *Id.* at 6–9. Plaintiff now seeks judicial review of the ALJ's decision.

## **Social Security Framework**

To determine whether a claimant is disabled, the Social Security Regulations outline a five-step process:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

Here, at step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 1, 2020. ECF No. 9 at 33. At step two, the ALJ found that Plaintiff had the following combination of severe impairments: breast cancer and hypertension. *Id.* At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix I. *Id.* at 36. After careful consideration of the entire record, at step four, the ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. § 416.967(b). *Id.* at 36–37. At step five, the ALJ found that the

claimant was not capable of performing past relevant work. *Id.* at 38. However, the ALJ found that given Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *Id.* at 44. As a result, the ALJ found that Plaintiff was not disabled. *Id.* at 45.

## STANDARD OF REVIEW

Judicial review of the ALJ's decision in a disability case is "limited to an inquiry into whether there is substantial evidence to support the findings of the [ALJ], and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (citing 42 U.S.C. § 405(g)). Whether the ALJ applied the correct legal standards is a question of law, which this Court reviews de novo. *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986) (citing *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)). In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, "taking into account evidence favorable as well as unfavorable to the decision." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). Even if the evidence preponderates against the ALJ's decision, the reviewing court must affirm if the decision applies the correct legal standard and is supported by substantial evidence. *See Crawford*, 363 F.3d at 1158–59.

3

## ANALYSIS

Plaintiff makes several arguments in support of her request to reverse the ALJ's decision and remand this case for further proceedings. First, Plaintiff argues that the ALJ improperly failed to include manipulative restrictions in her RFC Assessment. Second, Plaintiff contends that the ALJ erred when she failed to include the mild limitations she found in the four special review techniques in her RFC assessment. Third, Plaintiff maintains that the ALJ failed to properly assess the side effects of Plaintiff's medications and their impact on Plaintiff's ability to work. Fourth, Plaintiff argues that the ALJ's determination that jobs exist in the national economy that Plaintiff can perform is unsupported by substantial evidence because the ALJ based her decision on the vocational expert's ("VE") testimony who exclusively relied on third party data to generate the number of jobs (rephrased). Each argument will be addressed in order.

I.  Manipulative Restrictions

Plaintiff argues that there is significant evidence that supports manipulative limitations in the RFC assessment that the ALJ either failed to properly address or ignored altogether. Plaintiff contends that treatment notes demonstrated that Plaintiff had swelling and tenosynovitis in her finger PIP joint and wrists as well as severe arthritic pains. Plaintiff also argues that the consultative examiner noted that Plaintiff had mild difficulty opening her left fingers, while an orthopedic surgeon stated that Plaintiff had multiple trigger fingers[1] in both hands. Plaintiff contends that the ALJ failed to include these

---

1.  Trigger Finger is a condition that makes a finger become stuck in a bent position and it may straighten suddenly with a snap. *Trigger Finger*, Mayo Clinic (Dec. 3, 2022), https://www.mayoclinic.org/diseases-conditions/trigger-finger/symptoms-causes/syc-20365100?p=1.

restrictions in the RFC assessment and in the hypothetical question to the VE. Plaintiff also contends that the ALJ improperly evaluated the opinions of Dr. Barreras, Plaintiff's oncologist, and Dr. Schiuma, an orthopedic surgeon.

The Commissioner responds that the ALJ properly considered Plaintiff's manipulative restrictions, specifically her trigger fingers. The Commissioner argues that the ALJ explicitly acknowledged that Plaintiff had difficulty with her fingers, including complications with her right hand. Further disputing Plaintiff's claim, the Commissioner cites to portions of the ALJ's RFC assessment that detail Plaintiff's complaints regarding her manipulative restrictions. The Commissioner contends that the ALJ considered the treatment that was prescribed by Plaintiff's doctors, Plaintiff's mostly normal examinations, the opinion evidence, and Plaintiff's expansive activities of daily living to discount the severity of Plaintiff's allegations. The Commissioner argues that this consideration demonstrates that the ALJ's decision not to include manipulative limitations in the RFC assessment is supported by substantial evidence. In regard to the ALJ's evaluation of Dr. Barreras' opinion, the Commissioner contends that the ALJ properly found Dr. Barreras' November 2020 opinion to be persuasive and properly found his July 2021 to be unpersuasive. In regard to Dr. Schiuma's opinion, the Commissioner argues that the ALJ properly found his opinion unpersuasive because he did not address the discrepancy between his conclusion of extreme limitations and his limited examination finding, other opinions did not find such extreme limitations, and the opinion conflicted with the record as a whole.

Here, the undersigned finds that substantial evidence supports the ALJ's evaluation of Plaintiff's manipulative restrictions. At step two, the ALJ found that Plaintiff

5

had medically determinable trigger fingers. The ALJ noted that Dr. Schiuma prescribed Plaintiff medication to quiet her trigger fingers. When determining Plaintiff's RFC, the ALJ made multiple mentions of Plaintiff's trigger fingers. Specifically, the ALJ noted that: Plaintiff had issues with her right hand, which stemmed from shoulder surgery; Plaintiff complained of arthritis and had swelling in her fingers and hands; Plaintiff had difficulty opening her left fingers after closing them in a tight grip; and Plaintiff complained of finger pain. However, the ALJ discounted the severity of Plaintiff's allegations by noting that medication was treating these conditions, Plaintiff's examinations were mostly normal, and that Plaintiff could perform a wide range of activities during her day such as gardening and cooking, which require finger manipulation. The ALJ also pointed to opinion evidence that showed that Plaintiff had no gross limits on her activities. Further, two doctors did not opine that Plaintiff had any manipulative limitations. Therefore, the undersigned finds that the ALJ's decision not to include manipulative limitations in the RFC assessment is supported by substantial evidence.

Next, the undersigned will discuss the ALJ's evaluation of Dr. Barreras' and Dr. Schiuma's opinions, which Plaintiff alleges was improper.

The SSA has adopted new regulations that apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Under the new regulations, an ALJ should focus on the persuasiveness of medical opinions and prior administrative medical findings by looking at five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. *See Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 87144, at *4 (11th Cir. Jan. 10, 2022); 20 C.F.R. § 404.1520c(c)(1)–(5).

The ALJ may, but is not required to, explain how she considered factors other than supportability and consistency, which are the most important factors. *Id.* § 404.1520c(b)2. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). And "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2). Put differently, the ALJ's analysis considers whether the medical source's opinion or the prior administrative finding is (1) supported by the source's own records and (2) consistent with the other evidence of record. *Vachon v. Comm'r of Soc. Sec.*, No. 6:20-cv-1521-MRM, 2022 WL 458604, at *5 (M.D. Fla. Feb. 15, 2022).

Here, turning to the ALJ's evaluation of Dr. Barreras' opinions, the undersigned finds that substantial evidence supports the ALJ's evaluation. In the RFC analysis, the ALJ considered both of Dr. Barreras' opinions. The ALJ found the November 2020 opinion to be persuasive. In that opinion, Dr. Barreras opined that Plaintiff could perform work activity for eight hours a day five days a week, and that her memory, concentration, and ability to process were all within normal limits.

However, in July 2021, Dr. Barreras opined that Plaintiff could not work as she had severe neuropathy, dizziness, and ongoing headaches due to side effects from medication. Further, Dr. Barreras claimed that Plaintiff could not perform any mental activities during an eight-hour workday and would be off task more than 60% of the day.

7

Dr. Barreras also opined that Plaintiff had no ability to concentrate, or to follow, carry out, remember or understand simple instructions. The ALJ found this opinion to be unpersuasive. The ALJ noted that the opinion did not provide any reason as to why there was such a departure from the previous opinion within eight months. The ALJ also found the opinion to be inconsistent with Dr. Barreras' longitudinal treatment notes and the record as a whole. Thus, the undersigned finds that the ALJ properly evaluated Dr. Barrera's 2021 opinion and found it to be inconsistent with his own records and with other evidence in the record.

Turning to Dr. Schiuma's opinion, the ALJ found it to be unpersuasive as his opinion was unsupported by his own examinations and inconsistent with the record as a whole. The ALJ explained that Dr. Schiuma's opinion noted only trigger fingers, crepitus in the knees, and tenderness of the left heel. The ALJ then compared Dr. Schiuma's opinion with two examinations that did not find the limitations he found. The undersigned finds that substantial evidence supports the ALJ's evaluation of Dr. Schiuma's opinion. The ALJ compared Dr. Schiuma's opinion to his own notes and other evidence in the record and found that the extreme limitations findings in Dr. Schiuma's opinion were unpersuasive. Thus, the undersigned finds that the ALJ complied with regulations and properly evaluated Dr. Schiuma's opinions.

Therefore, based upon review of the record, the undersigned finds that substantial evidence supports the ALJ's evaluation of Dr. Barreras' and Dr. Schiuma's opinions as well as her decision not to include manipulative restrictions.

> II. <u>The ALJ's Failure to Include the Four Special Review Technique Areas in the RFC Assessment</u>

Plaintiff next argues that the ALJ failed to include in her RFC the mild mental limitations she found related to understanding, remembering or applying information; interacting with others; concentration, persistence, or pace; and adapting or managing herself. Plaintiff also argues that the ALJ failed to include these limitations in the hypothetical to the VE and in her RFC analysis. In sum, Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ did not explicitly or implicitly include the mild mental limitations in her RFC analysis or explain why she did not include them.

The Commissioner responds that the ALJ discussed in detail and evaluated Plaintiff's mild mental impairments in the context of evaluating her RFC. The Commissioner further argues that the ALJ found that Plaintiff only had mild limitations, thus, the ALJ was not required to account for such limitations in her hypothetical question to the VE.

Plaintiff relies on *Schink v. Commissioner of Social Security* for support of her argument that the ALJ erred in not including the mild mental limitations in the RFC assessment. 935 F.3d 1245 (11th Cir. 2019). In *Schink*, the Eleventh Circuit found that the ALJ's step two finding that a claimant's mental impairments, most notably his bipolar disease, were non-severe was not supported by substantial evidence. *Schink*, 935 F.3d at 1265. The *Schink* court also found that the ALJ erred by failing to consider the claimant's mental capabilities and limitations in the RFC assessment. *Id.*

In the instant action, Plaintiff does not contend that the ALJ erred at step two. Instead, Plaintiff asserts that the ALJ failed to discuss her mental limitations and

capabilities in the RFC analysis. Although the *Schink* court found that the ALJ's step two finding was not supported by substantial evidence, the court stated that such error could be found harmless if the ALJ proceeded in the sequential evaluation, noted the claimant's mental impairment when conducting the RFC analysis, and reached conclusions regarding the claimant's mental capabilities. *Id.* at 1268. However, the court found that the ALJ mostly assessed the claimant's physical impairments, and even the most favorable reading showed that the ALJ did not consider any mental impairments. *Id.*

Here, at step two, the ALJ found that Plaintiff had mild limitations in understanding, remembering, or applying information; interacting with others; concentration, persistence, or pace; and adapting or managing herself. And even though Plaintiff does not challenge this finding, as a threshold issue, the undersigned finds that substantial evidence supports this finding. Turning to the RFC assessment in the instant action, unlike *Schink*, the ALJ discussed the medical opinions that evaluated Plaintiff's mental limitations and capabilities. Specifically, the ALJ discussed Dr. Luna's, the consultative examiner, finding that Plaintiff could perform "work-related mental activities involving common understanding and memory, sustain concentration and persistence, social interaction, and adaptation." ECF No. 9 at 40. The ALJ also discussed Dr. Barreras' November 2020 mental medical source status report that noted "coherent thought process within normal limits; good concentration within normal limits; orientation normal to time and place; memory within normal limits; and behavioral observations of good appearance." *Id.* at 40–41. In fact, contrary to Plaintiff's allegations, the ALJ stated that she found Dr. Barreras' opinion to be persuasive "as it is supported with the noted mental findings by the doctor and overall normal mental findings in the record as a whole and by the

10

consultative examiner." *Id.* The ALJ also discussed in detail the DDS reviewing psychological consultants' opinions and compared the opinions to the opinion of the onetime consultative evaluation. *Id.* at 42.

Additionally, even if the ALJ erred by not discussing the impairments on a function-by-function assessment, the error would be harmless because the ALJ adequately addressed Plaintiff's mental impairments in the RFC narrative. *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (concluding that an error is harmless if a correct application of the regulations would not contradict the ALJ's ultimate findings). Furthermore, extensive persuasive caselaw exists from this District and Circuit which holds that ALJs are not obligated to include mental limitations in the RFC even when they find "mild" limitations while completing a PRTF. *See Chestang v. Comm'r of Soc. Sec.*, No. 8:21-cv-482-MRM, 2022 WL 4354849, at *8 (M.D. Fla. Sept. 20, 2022) (collecting cases).

Accordingly, the undersigned finds that *Schink* is inapposite to this action. The ALJ did not err at step two and properly considered Plaintiff's mental capabilities in the RFC assessment. Even if the ALJ did err, the undersigned finds that such an error would be harmless because the ALJ discussed the mild mental limitations when recounting the opinion evidence. Therefore, the undersigned finds that the ALJ's RFC assessment is supported by substantial evidence.

As to the hypothetical proposed to the VE, Plaintiff argues that the ALJ should have included the mild limitations in the hypothetical. However, as the ALJ discussed during the RFC assessment, Plaintiff's mental examinations and impairments were mostly normal. Further, Plaintiff has not identified any evidence—nor can such evidence be

found in the record—indicating that her mild mental limitations would prevent her from performing the type of light work described in the RFC.  And even if Plaintiff did find such evidence, it would be inconsistent with the record as a whole.  Plaintiff does not identify any restriction caused by the mild limitations that should have been included in the hypothetical to the VE.  The ALJ proposed limitations in the hypothetical that were identified in the RFC assessment, and therefore the undersigned finds no error in the ALJ's hypothetical.  *See Harris v. Saul*, No. 3:19-cv-1181-JRK, 2021 WL 1016128, at *5 (M.D. Fla. Mar. 17, 2021) (finding that ALJ did not err in his hypothetical to the VE since the limitations he did not include were only mild).

    III.    <u>The ALJ's Evaluation of the Side Effects of Plaintiff's Medication</u>

Next, Plaintiff argues that the ALJ failed to properly assess the side effects of Plaintiff's medications and their impact on Plaintiff's ability to work.  Plaintiff maintains that the record contains evidence of significant side effects caused by medication, which warranted limitations in the RFC assessment.  Plaintiff contends that the ALJ recited the evidence indicating that Plaintiff suffered from side effects due to her medication; however, Plaintiff asserts that the ALJ failed to determine how those side effects impacted her ability to work.  Due to the ALJ's failure to include such limitations, Plaintiff argues that the ALJ's decision was not supported by substantial evidence.

The Commissioner responds that the ALJ properly considered the side effects caused by Plaintiff's medication.  In fact, the Commissioner argues that the ALJ explicitly noted that Plaintiff could perform light work despite her reports of pain and dizziness caused by the cancer medications.  The Commissioner contends that this finding is supported by other evidence in the record.  For example, the type of daily activities

Plaintiff performed, other opinion evidence that opined that Plaintiff could perform light work, and the fact that Plaintiff's examination notes showed that she denied dizziness all support the ALJ's decision regarding the side effects caused by Plaintiff's medication. Thus, the Commissioner contends that the ALJ adequately considered the effects of Plaintiff's medications on her ability to work.

A claimant may establish disability through his or her own testimony of pain or other subjective symptoms. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). However, subjective statements about a claimant's pain or other symptoms will not alone establish that the claimant is disabled. 20 C.F.R. §404.1529(a). To establish disability through his or her own testimony, a claimant must show: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson*, 284 F.3d at 1225. "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561–62. The Court will not disturb a clearly articulated subjective complaint finding that is supported by substantial evidence. *See id.* at 1562.

If the ALJ determines that the claimant has a medically determinable impairment that could reasonably produce the claimant's alleged pain or other symptoms, the ALJ must then evaluate the extent to which the intensity and persistence of those symptoms limit the claimant's ability to work. 20 C.F.R. § 404.1529(c)(1). In doing so, the ALJ considers a variety of evidence, including, but not limited to, the claimant's history, the medical signs and laboratory findings, the claimant's statements, medical source

opinions, and other evidence of how the pain affects the claimant's daily activities and ability to work. *Id.* § 404.1529(c)(1)–(3). Factors relevant to the ALJ's consideration regarding a claimant's allegations of pain include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication, the claimant receives for pain; (6) measures used for pain relief; and (7) other factors pertaining to functional limitations and restrictions to pain. *Id.* § 404.1529(c)(3)(i)–(vii).

"In determining whether a claimant's impairments limit her ability to work, the ALJ considers the claimant's subjective symptoms, which includes the effectiveness and side effects of any medications taken for those symptoms." *Walker v. Comm'r of Soc. Sec.*, 404 Fed. App'x 362, 366 (11th Cir. 2010) (citing 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv)). Under certain circumstances, an ALJ's duty to develop a full record includes investigation into the side effects of medications. *Id.*

The undersigned finds that the ALJ properly considered the side effects of Plaintiff's medications. The ALJ partially credited Plaintiff's testimony. During the RFC assessment, the ALJ noted multiple symptoms Plaintiff alleged that she suffered from due to her medication. Further, Plaintiff testified that her medications make her dizzy, sleepy, and cause bone pain and constipation. The ALJ found Plaintiff's allegations and contentions regarding the nature and severity of the impairment-related symptoms to be partially consistent with the medical evidence, a finding that encompassed Plaintiff's testimony about her side effects. Plaintiff does not contest this partial credibility finding. Further, nothing in Plaintiff's testimony suggested that her sleepiness, bone pain, or

constipation were severe enough to be disabling alone or in combination with her other impairments. Additional support is found in the fact that Plaintiff's medical examinations were mostly normal as well as the fact that multiple doctors found that Plaintiff's mental capabilities were within normal limits. Therefore, the undersigned finds that the ALJ's evaluation of the side effects caused by Plaintiff's medication is supported by substantial evidence.

IV. <u>The ALJ's Reliance on the VE's Testimony</u>

Lastly, Plaintiff argues that the VE's exclusive reliance on a software program to determine the number of jobs in the national economy as his only source renders his testimony unreliable. As a result, Plaintiff contends that the ALJ's step five analysis is not supported by substantial evidence because the ALJ relied on the VE's testimony.

The Commissioner responds that the VE is entitled to rely upon software programs to generate data regarding the number of jobs available in the national economy. The Commissioner contends that Plaintiff has provided no evidence that the VE relied exclusively upon the software program. Nor has Plaintiff shown any reason to believe that the VE's testimony is not accurate. Further, the Commissioner argues that the VE also stated that he was relying on his own knowledge and expertise. Thus, the Commissioner contends that the ALJ properly relied upon the VE's testimony.

The undersigned finds *Breaux v. Commissioner of Social Security* to provide proper guidance as to the issue raised by Plaintiff. No. 20-21917-CIV-ALTONAGA/GOODMAN, 2021 WL 3721547 (S.D. Fla. August 26, 2021). In *Breaux*, similar to Plaintiff here, the claimant asked the court to find that exclusive reliance on the number of jobs available produced by a software program, such as Job Browser Pro, is

insufficient to provide substantial evidence at step five of the sequential evaluation "unless the [vocational expert] also provides evidence of the number of jobs available in the national economy based on her own knowledge and experience." *Id.* at *2. The court noted that vocational experts' reliance on such computer programs has resulted in different decisions in various district courts. *Id.*

However, the court stated that the Eleventh Circuit has specifically identified that one acceptable method to be used by a vocational expert, in conjunction with the vocational expert's own knowledge and expertise, is "the occupational density method." *Id.* This method "approximates job numbers using a software program known as Job Browser Pro from SkillTRAN, which interprets available data." *Id.* (quoting *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1283 (11th Cir. 2020)). The court found that the vocational expert's testimony, which relied on Job Browser Pro to generate the data regarding the number of jobs in the national economy, constituted substantial evidence and supported the ALJ's decision. *Id.* ("Contrary to [Claimant's] position, the Eleventh Circuit has endorsed Job Browser Pro as a tool for interpreting and presenting jobs data. . . . The [vocational expert's] reliance on this program, in and of itself, does not diminish the weight to be given to her testimony.").

Guided by *Breaux* and *Goode*, the undersigned finds that the VE's testimony constitutes substantial evidence supporting the ALJ's decision. The VE in this action earned a bachelor's degree in psychology, earned a master's degree in rehabilitation counseling, and has decades of experience in the field of vocational rehabilitation as a counselor and as a specialist. ECF No. 9 at 353–57. The ALJ confirmed that the VE's resume accurately reflected his personal qualifications. *Id.* at 68.

At the administrative hearing, the VE stated that his testimony was based on his knowledge, education, training, and experience. *Id.* In addition, the VE used the Job Browser Pro program to generate data regarding the number of jobs in the national economy, which he was entitled to do. *See id.*; *Breaux*, 2021 WL 3721547, at * 3. On cross-examination, Plaintiff's counsel simply asked the VE what the source of his job numbers was and asked nothing more on the issue. Plaintiff did not challenge the accuracy of the number of jobs during the hearing nor did she suggest the numbers provided were inaccurate. However, now, in her response, Plaintiff argues that the number of jobs provided by the VE was inaccurate. Plaintiff concedes that the inaccuracy could have been caused by the fact that the VE was using an earlier version of the Job Browser Pro software. The undersigned declines to address this issue because it was not raised to the ALJ, it was not raised in Plaintiff's Motion before this Court, and—by Plaintiff's own admission—it may be an inaccurate statement due to the version of Job Browser Pro that was used.

Contrary to Plaintiff's assertion, the VE explicitly said his testimony would be based in part on his knowledge and experience. This includes his testimony regarding the number of available jobs. The combination of this assertion by the VE, his qualifications, and his overall testimony provided much more than a mere scintilla of evidence for the ALJ to rely on. Therefore, the undersigned finds that the ALJ's step five evaluation, based upon the record and the evidence and testimony before her, is supported by substantial evidence.

**RECOMMENDATION**

For the reasons set forth above, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion for Summary Judgment ECF No. 11, be **DENIED**, and that Defendant's Motion for Summary Judgment, ECF No. 15, be **GRANTED**.

Within seven (7) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). Any response to any objection filed shall be due within seven (7) days of the objection. Neither party shall file a reply. The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1 (2016); *see Thomas v. Arn*, 474 U.S. 140 (1985).

DONE and SUBMITTED at Fort Lauderdale, Florida, this 15th day of February 2023.

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable Roy K. Altman
All Counsel of Record